## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| STATE OF OHIO, STATE OF ALABAMA, STATE OF ARIZONA, STATE OF ARKANSAS, STATE OF FLORIDA, STATE OF KANSAS, COMMONWEALTH OF KENTUCKY, STATE OF MISSOURI, STATE OF NEBRASKA, STATE OF OKLAHOMA, STATE OF SOUTH CAROLINA, STATE OF WEST VIRGINIA, | : : : : : : : : : : : | Case No. 1:21-cv-675 |
| *Plaintiffs*, | : | |
| v. | : : | |
| XAVIER BECERRA, in his official capacity as Secretary of Health and Human Services; U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; JESSICA S. MARCELLA, in her official capacity as Deputy Assistant Secretary for Population Affairs; and OFFICE OF POPULATION AFFAIRS, | : : : : : : : : : : : | |
| *Defendants*. | : | |

## COMBINED MOTION FOR SUMMARY JUDGMENT AND VACATUR OF RULE AND MEMORANDUM IN SUPPORT

**MOTION FOR SUMMARY JUDGMENT AND VACATUR OF RULE**

The Final Rule, *Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services*, 86 Fed. Reg. 56144-01 (Oct. 7, 2021) (codified at 42 C.F.R. pt. 59), unlawfully permits funds appropriated under Title X of the Public Health Service Act to be used in programs where abortion is a method of family planning. *See* 42 U.S.C. §300a-6. Application of that Rule in Ohio has been preliminarily enjoined. The Plaintiff States now move the Court for summary judgment under Federal Rule of Civil Procedure 56, for a declaratory judgment reiterating that the Rule is unlawful, and for an order pursuant to 5 U.S.C. §706 to "set aside" the "agency action" adopting the rule, since the law has been "found to be" unlawful. This relief is justified for the reasons discussed in more detail in the attached memorandum.

Dated: January 24, 2025                    Respectfully Submitted,

                                           DAVE YOST
                                           Ohio Attorney General

                                           */s/ T. Elliot Gaiser*
                                           T. ELLIOT GAISER* (0096145)
                                           Solicitor General
                                            *Trial attorney
                                           STEPHEN P. CARNEY (0063460)
                                           Deputy Solicitor General
                                           AMANDA NAROG (0093954)
                                           Assistant Attorney General
                                           30 East Broad Street, 17th Floor
                                           6l4-466-8980
                                           614-466-5087 fax
                                           thomas.gaiser@ohioago.gov

                                           *Counsel for the State of Ohio*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... ii

INTRODUCTION...................................................................................................................... 1

STATEMENT ............................................................................................................................ 3

LEGAL STANDARD ................................................................................................................ 5

ARGUMENT ............................................................................................................................. 6

    I.     The Sixth Circuit has already established that the Rule is invalid, so summary judgment is required here. ............................................................................................. 6

    II.    The APA provides for the Court to "set aside" or vacate the entire Final Rule. ......... 9

CONCLUSION.........................................................................................................................13

CERTIFICATE OF SERVICE................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Allina Health Servs. v. Sebelius*,
   746 F.3d 1102 (D.C. Cir. 2014)..................................................................................11

*Am. Bioscience, Inc. v. Thompson*,
   269 F.3d 1077 (D.C. Cir. 2001) ...................................................................................5

*Becerra v. Azar*,
   950 F.3d 1067 (9th Cir. 2020) (en banc)......................................................................4

*Becerra v. Mayor of Baltimore*,
   141 S. Ct. 2170 (2021)..................................................................................................4

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
   467 U.S. 837 (1984) ......................................................................................................8

*Daunt v. Benson*,
   999 F.3d 299 (6th Cir. 2021) ........................................................................................7

*Kentucky v. Fed. Hwy. Admin.*,
   728 F. Supp. 3d 501 (W.D. Ky. 2024) .......................................................................11

*Kiakombua v. Wolf*,
   498 F. Supp. 3d 1 (D.D.C. 2020)................................................................................11

*Labrador v. Poe by & through Poe*,
   144 S. Ct. 921 (2024) ....................................................................................................9

*Landmark Hosp. of Salt Lake City v. Azar*,
   442 F. Supp. 3d 327 (D.D.C. 2020).............................................................................6

*Loper Bright Enterprises v. Raimondo*,
   603 U.S. 639 (2024) .................................................................................................5, 8

*Mann Constr., Inc. v. United States*,
   27 F.4th 1138 (6th Cir. 2022) .....................................................................................11

*Mason Gen. Hosp. v. Sec'y of Dep't of Health & Hum. Servs.*,
   809 F.2d 1220 (6th Cir. 1987).....................................................................................10

*Mayor of Baltimore v. Azar*,
   973 F.3d 258 (4th Cir. 2020) (en banc)....................................................................4, 12

*Ohio Office of Opportunities for Ohioans with Disabilities v. United States Dep't of Educ.*,
    986 F.3d 618 (6th Cir. 2021) ................................................................................ 6

*Ohio v. Becerra*,
    577 F. Supp 3d 678 (S.D. Ohio 2021) ............................................................... *passim*

*Oregon v. Becerra*,
    141 S. Ct. 2621 (2021) ....................................................................................... 4

*Oregon v. Cochran*,
    ––– U.S. ––––, 141 S. Ct. 1369 (2021) ............................................................. 4

*Rust v. Sullivan*,
    500 U.S. 173 (1991) ........................................................................................... 8

*Tennessee v. Becerra*,
    117 F.4th 348 (6th Cir. 2024) ........................................................................... 8

*Tennessee v. Cardona*,
    ––– F.Supp.3d ––––, 2025 WL 63795 (E.D. Ky. 2025)................................... 3, 11

**Statutes and Rules**

5 U.S.C. §706.......................................................................................................1, 2, 6

42 U.S.C. §300a-6.................................................................................................1, 3, 4

Fed. R. Civ. P. 56 .................................................................................................. 5

**Other Authorities**

65 Fed. Reg. 41281-01 (July 3, 2000) ................................................................. 2

86 Fed. Reg. 56144-01 (Oct. 7, 2021).................................................................2, 12

Gaiser, Sridharan, and Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions,* U. Chi. L. Rev. Online (Aug. 28, 2024) ......................... 10

Public Health Service Act, Pub. L. No. 91-572, §6, 84 Stat. 1504, 1506–08 (1970)........................ 1

## INTRODUCTION

The Sixth Circuit has already held that the Final Rule challenged here violates Congress's statutory command, so the only thing left for *this* Court to do is to follow another statutory command. The Administrative Procedure Act (APA) says that a "reviewing court" shall "hold unlawful and set aside agency action, findings, and conclusions found to be" invalid on various grounds. 5 U.S.C. §706. The Sixth Circuit has already "found [the Rule] to be" invalid, so this Court should now "set aside" the Final Rule.

Begin with a recap of this case so far: Several States challenged an administrative rule implementing Title X, a federal program meant to fund family planning through contraception, while *not* funding programs that include abortion. Specifically, Congress created the program by enacting Title X of the Public Health Service Act, Pub. L. No. 91-572, §6, 84 Stat. 1504, 1506–08 (1970). Congress included a provision forbidding "funds appropriated under" Title X from being "used in programs where abortion is a method of family planning." 42 U.S.C. §300a-6.

That statute represents a democratic compromise that has held firm for decades, even as the broader abortion debate has often been contentious. While Americans have long disagreed about abortion law and policy—with disagreements fought at the state and federal levels in courts, legislatures, and at the ballot box, including in Ohio—this Title X funding limit has represented a stable compromise with broad public support. The compromise is not about limiting abortion funding or about limiting abortion—it is about *maintaining* broad support for Title X's family-planning program by setting that contentious issue aside, to be debated in other contexts. That is why following the dictates of the law is imperative—it maintains the broad support for keeping Title X

funded. The Plaintiff States here wish to maintain that common-ground consensus and uphold the rule of the law that Congress enacted.

The U.S. Department of Health and Human Services, or "HHS," promulgated a "Final Rule" that violates that statute, as its Rule does not require grantees that provide abortion to ensure sufficient physical or financial separation between their Title-X-funded activity and their abortion activity. Specifically, the Rule, *Ensuring Access to Equitable, Affordable, Client-Centered, Quality Family Planning Services*, 86 Fed. Reg. 56144-01 (Oct. 7, 2021), allows, among other things for abortion providers to subsidize their abortion practices using Title X dollars and for Title X grantees to run family-planning programs with an "abortion element," *Provision of Abortion-Related Services in Family Planning Services Projects*, 65 Fed. Reg. 41281-01, 41282 (July 3, 2000) (incorporated into the Final Rule by reference at 86 Fed. Reg. 56150).

So Ohio and other States sued, asking this Court to "declare the Final Rule to be not in accordance with law, arbitrary and capricious, and invalid," and to "[s]et aside and vacate the Final Rule," as the APA provides. Compl. ¶139, R.1, PageID#23; *see also* 5 U.S.C. §706. To start, the States asked for a preliminary injunction against the rule, and although this Court first declined to grant relief, the Sixth Circuit reversed in part. *Ohio v. Becerra*, 577 F. Supp 3d 678 (S.D. Ohio 2021), *aff'd in part and rev'd in part by*, 87 F.4th 759, 765 (6th Cir. 2023). This Court then issued an implementing preliminary injunction. *See* Order, R.81, PageID#829–30.

The Sixth Circuit held that the Rule violated Title X's statutory command by failing to provide for sufficient separation between grantees' Title X activity and abortion activity. *Ohio,* 87 F.4th at 765. The Court explained that the "Rule's program-integrity requirements do not represent a permissible interpretation of § 1008," *id.;* that is, this lack of "program integrity" violated

2

the prohibition against funding "programs where abortion is a method of family planning."  42 U.S.C. §300a-6.  The Court held that this invalidity warranted a preliminary injunction in Ohio's favor, but not the other Plaintiff States', based on Ohio's unique showing of harm at the preliminary-injunction stage.  *Ohio,* 87 F.4th at 784.  (The Court also tentatively rejected a different attack on the Rule regarding abortion referrals, but that part is not essential to this Motion.)

Because the Rule violates the statute, this Court's path is as clear as Congress's straightforward APA instructions.  When an "agency action"—such as the Final Rule here—is "found to be" invalid—as the Sixth Circuit has done—then a reviewing court must "hold unlawful and set aside" the challenged action.  As detailed below, that text, along with the structure and history of the APA, leaves no doubt that this vacatur remedy is mandatory.

Indeed, just last week, across the river from this Court, another district court did just that with an administrative rule under Title IX, the federal education-funding law barring sex discrimination by funding recipients.  *See Tennessee v. Cardona,* --- F.Supp.3d ----, 2025 WL 63795 (E.D. Ky. 2025).  The court in that case explained that when "a reviewing court declares that the challenged action of an administrative agency violates the law, vacatur is the 'normal remedy.'"  *Id.* at *6 (quotation omitted).  That is so because "a vacatur order takes the unlawful agency action 'off the books'—an entirely appropriate response when a plaintiff successfully establishes that the agency's conduct violates the law."  *Id.* (quotation omitted).

So, too, here.  The Rule is an invalid agency action, so the Court must "set aside" the Rule.

## STATEMENT

For brevity's sake, the Plaintiff States will not restate all the facts involving the Final Rule and the procedure so far.  This Court has already reviewed the law and facts at the preliminary-

3

injunction stage, and this motion turns solely on the legal remedy provided by the APA. Nevertheless, the Plaintiff States highlight these few points.

The Title X program was enacted in 1970 to fund family-planning programs, and Congress provided that the funded programs would provide contraception, not abortion. Specifically, Section 1008 of Title X bars funds from being "used in programs where abortion is a method of family planning." 42 U.S.C. §300a-6. For decades, HHS has had administrative rules that implement Title X, and it has zig-zagged between stricter and looser controls that purported to implement this statutory prohibition and other Title X aspects. *See Ohio,* 87 F.4th at 766–67 (summarizing history). In the second-most-recent round, a 2019 Rule provided for a "Program Integrity Requirements" that mandated financial and physical separation between a grantee's Title X activities and its abortion activities, if any. *See id.* at 767. That Rule was litigated through multiple federal courts, and the Supreme Court granted certiorari—but HHS rescinded the rule and dismissed its appeal. *See id.,* citing *Becerra v. Azar*, 950 F.3d 1067, 1074 (9th Cir. 2020) (en banc) (upholding 2019 Rule); *Mayor of Baltimore v. Azar*, 973 F.3d 258, 296 (4th Cir. 2020) (en banc) (enjoining Rule in Maryland); *Oregon v. Cochran*, ––– U.S. ––––, 141 S. Ct. 1369 (2021); *Oregon v. Becerra*, 141 S. Ct. 2621 (2021); *Becerra v. Mayor of Baltimore*, 141 S. Ct. 2170 (2021) (dismissing certiorari in parallel petitions).

The 2021 Final Rule, the one at issue here, was issued in October and went into effect on November 8, 2021. *Ohio,* 87 F.4th at 767. The Rule "eliminated the 2019 Rule's strict program-integrity requirements, reinstating the 2000 Rule and its accompanying guidance." *Id.* That earlier 2000 guidance explained "that Title X grantees *can* have an 'abortion element in a program of

family planning services,' as long as it is not too 'large' or 'intimately related' with the non-abortion parts of the family-planning program." *Id.* at 778 (quoting States' Appellants Br. at 24–25).

The Sixth Circuit held that such allowance, and the lack of any concrete test for what made an "abortion element" "too 'large,'" meant that the Rule "cannot be squared with the statute." *Id.* at 778–79. It concluded that "[b]ecause the 2021 Rule fails in this regard, its construction is not a permissible reading of the statute, and the States are likely to succeed on the merits of this challenge." *Id.* at 780.

The Sixth Circuit also held that the States were unlikely to succeed on a different challenge, regarding the Rule's requirement to refer patients to abortion providers. *Ohio*, 87 F.4th at 775. As explained below (at 7-8), the Court need not revisit that issue to resolve this case now. Nevertheless, as noted below, the Sixth Circuit's *Chevron*-based holding is no longer tenable after *Loper Bright Enterprises v. Raimondo,* 603 U.S. 639 (2024).

The above background gives rise to the current question, which is how to remedy the Rule's violation of the statute as to program activity.

## LEGAL STANDARD

***As to the merits:*** Summary judgment is, of course, normally appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In APA cases, though, the standard is a bit different, as even a district court "sits as an appellate tribunal, and the "entire case on review is a question of law." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotations omitted). That means that the court reviews both facts and law, using summary judgment as "the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise

consistent with the APA standard of review." *Landmark Hosp. of Salt Lake City v. Azar*, 442 F.

Supp. 3d 327, 331 (D.D.C. 2020) (quotation omitted).

    *As to the remedy:* The APA provides a distinct legal remedy when a court finds an admin-

istrative rule or other agency action to be invalid: the court shall "hold unlawful and set aside

agency action, findings, and conclusions found to be" invalid, 5 U.S.C. §706(2), whether that in-

validity is based upon a rule or other act being "not in accordance with law," or "arbitrary" and

"capricious," or any other listed flavor of invalidity, *id.* §706(2)(A)–(F).  *See Ohio Office of Oppor-*

*tunities for Ohioans with Disabilities v. United States Dep't of Educ.*, 986 F.3d 618, 623 (6th Cir.

2021).

## ARGUMENT

## I.    The Sixth Circuit has already established that the Rule is invalid, so summary judgment is required here.

    As noted just above, summary judgment is, in APA cases, the procedural vehicle used to

resolve whether a challenge Rule is valid.  *Landmark Hosp.*, 442 F. Supp. 3d at 331.  The question

is not the usual, non-APA one of material factual dispute, but is whether the Final Rule comports

with the statute that authorizes it.

    The Sixth Circuit has already answered the question: it found that the Rule violates the

statute, as its "construction is not a permissible reading of the statute."  *Ohio*, 87 F.4th at 780.  To

be sure, the Court formally held that "the States are likely to succeed on the merits of this chal-

lenge," as the case's preliminary-relief posture called for the "likelihood" standard.  But here, the

Circuit's legal holding binds this court as law of the case.  As the Sixth Circuit has explained,

"when a court reviewing the propriety of a preliminary injunction issues a fully considered ruling

on an issue of law with the benefit of a fully developed record, then the conclusions with respect to

the likelihood of success on the merits are the law of the case in any subsequent appeal." *Daunt v. Benson*, 999 F.3d 299, 308 (6th Cir. 2021) (quotation omitted). As Judge Moore's opinion in *Daunt* further explained, "the law-of-the-case doctrine may be inapplicable when the legal conclusions in a preliminary-injunction decision were based on an underdeveloped record, issued under time pressures related to the circumstances of the preliminary injunction at issue, or were otherwise not conclusively decided." *Id.* Here, none of the latter exceptions apply: The record was fully developed because the record in an APA case is the agency's record in promulgating the challenge regulation. The decision was not hurried; it came over a year after argument. Most important, the Circuit ruled on a purely legal issue, so no daylight breaks in between the "likelihood" standard and the final judgment of the Rule's validity. That is because the Sixth Circuit reviewed, at that stage, the purely legal issue of comparing the Rule to the statute. To the extent that any factual review was involved, it involved the facts that HHS gathered in the administrative record—namely, the same thing to be reviewed on final judgment. That is, this is not like a non-APA fact-bound case, in which the factual record at the preliminary stage might lean one way, but a fuller factual record at trial cuts the other way. Here, both are the same. Therefore, this Court is bound by the Sixth Circuit's holding to conclude, as a matter of final summary judgment, that the Rule is invalid, as HHS's construction of the statute undergirding the Rule, "is not a permissible reading of the statute." *Ohio*, 87 F.4th at 780.

For this purpose, the States' other challenge—that the Rule's "abortion referral" violates the statute, too—does not change anything. True, the Sixth Circuit affirmed this Court's holding that the referral requirement is consistent with the statute, *id.* at 775, but that does not change the fact that the program-integrity flaw dooms the Rule on its own. That is especially so here, where

the two issues run in opposite directions: The States' referral objection was that the referral requirement was invalid, and could be used to wrongly *deny* funding to otherwise-eligible applicants. By contrast, the program-integrity objection is that the Rule allows *granting* money to those who should be *ineligible* (unless they change operations to comply with the statute). That problem remains a violation of the statute, by spending where Congress forbids it, regardless of whether HHS could require a different requirement to be met. Thus, the referral issue falls away, and does not affect summary judgment here (nor does it lead to "severing" parts of the Rule, as explained below at 11-13).

Nevertheless, the States repeat and preserve their objection to the referral rule, for future purposes, for these reasons. The States submit that the Rule's referral requirement violates the statute for all the reasons in the preliminary-injunction briefing. *See* PI Motion, R.2, PageID#152–54, 168–70. The Sixth Circuit upheld the referral requirement under *Rust v. Sullivan,* which was premised upon *Chevron* deference. *Ohio*, 87 F.4th at 769, 772 (citing *Rust v. Sullivan*, 500 U.S. 173 (1991) and *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). The Circuit noted, however, that the then-pending *Loper Bright* case might upend *Chevron,* and thus *Rust,* and thus the referral requirement's ultimate fate. *Ohio*, 87 F.4th at 769. Since then, *Chevron* has indeed been relegated to the dustbin of jurisprudence. *Loper Bright,* 603 U.S. at 412. However, the Circuit has also, since *Loper Bright,* held in a different case that *Rust* still supports the referral requirement. *Tennessee v. Becerra,* 117 F.4th 348, 363–64 (6th Cir. 2024). Because that litigation is ongoing, the States urge this Court to resolve *this* case without wading into any uncertainty on *that* score. But the States incorporate, to preserve the issue for possible appeal, our arguments from the preliminary-injunction stage.

In any event, regardless of the referral requirement, the Rule's invalidity on program-integrity grounds mandates summary judgment in the States' favor, and a declaratory judgment that the Rule is invalid.  That leaves only the question of the other statutory remedy: vacatur.  As shown below, that is the right course here.

## II.    The APA provides for the Court to "set aside" or vacate the entire Final Rule.

The APA is straightforward in instructing courts what to do when a final rule or other agency action is "found to be" invalid: it should "hold unlawful and set aside" that "agency action"—here, the Final Rule.  While that text is straightforward enough to end the matter where it starts, uncertainty has nevertheless surrounded the APA remedy question.  The States therefore explain why the statutory text, buttressed by the APA's structure and history, caselaw, and common sense, means just what it says.

For starters, it is important to separate the APA remedy question, which is rooted in both the statute's text and the nature of agency-action review, from the separate, broader debate over so-called "universal injunctions" in non-APA contexts.  Courts have been wrestling for quite some time with whether so-called "universal injunctions" or "nationwide injunctions"—in which a Court enjoins a law's application in all cases, beyond the parties in a case—are ever allowed, and if so, when.  *See, e.g., Labrador v. Poe by & through Poe,* 144 S. Ct. 921, 921 (2024) (Gorsuch, J., concurring in grant of a stay); *id.* at 931–32 (Kavanaugh, J., concurring in grant of a stay).  That question involves important issues of jurisdiction and judicial power, but it is distinct from the APA-specific question here.  *See id.* at 932 (Kavanaugh, J., concurring in grant of a stay) (noting "ongoing debate about whether any such rule" against universal injunctions "would apply to Administrative Procedure Act cases involving new federal regulations, given the text of the APA.").

9

Thus, whatever the answer to the "universal" question and to the APA question, they are separate questions with different answers.

With that distinction clarified, the APA remedy is not just plain from the text, but it is also reinforced by the history and nature of APA review. Before the APA, the term "set aside" was used in an earlier law, the Emergency Price Control Act of 1942, and plainly meant that any regulation under the Act would be fully "set aside," not just for the parties in court. *See* Gaiser, Sridharan, and Cordova, *The Truth of Erasure: Universal Remedies for Universal Agency Actions,* U. Chi. L. Rev. Online, *4 (Aug. 28, 2024). Similarly, the "1941 Attorney General's Report on Administrative Procedure, in discussing judicial review of agencies' formal rulemaking, explained that a 'judgment adverse to a regulation results in setting it aside.'" *Id.* (quoting 1941 Attorney General's Report).

Further, APA review was understood to be akin to vertical judicial review of a lower court's action, with the agency in the lower-court role—as opposed to the structure of a non-APA case brought as a civil action against an executive actor. In the latter case, a court may enjoin the executive to act or not act on a given set of facts. But under the APA, review of an agency adjudication means setting aside that order. And likewise, adoption of a Rule, even if "quasi-legislative," is an agency action, which means it is vacated like a lower-court order—a Rule is not reviewed "as applied," as a statute might be. *See* Gaiser*, Truth of Erasure,* at *4–6.

For these reasons, "[e]very circuit has effectively recognized that the APA authorizes it to vacate a rule." *Id.* at *3 and n.1 (collecting cases); *e.g., Mason Gen. Hosp. v. Sec'y of Dep't of Health & Hum. Servs.,* 809 F.2d 1220, 1231 (6th Cir. 1987). The D.C. Circuit, of course, sees the most APA cases, so its practice is established broadly and deeply. As Chief Justice Roberts put it

colloquially in questioning at argument, the D.C. Circuit vacates "five times before breakfast, that's what you do in an APA case." *United States v. Texas,* No. 2-58, Oral Arg. Tr. at 35. To be sure, many circuits have spoken of vcacatur as authorized, not mandatory. But the Sixth Circuit has recently said, in finding a rule invalid under the APA, that "we must set it aside." *Mann Constr., Inc. v. United States*, 27 F.4th 1138, 1148 (6th Cir. 2022). In any case, while the Plaintiff States believe that the Court "must set [] aside" the Final Rule, *id.,* any potential discretion on that score *ought to* be used in favor of vacatur.

Indeed, a district court just over the river, and just a few weeks ago, went over all this ground and vacated an agency rule that violated its authorizing statute, Title IX. *See Cardona*, 2025 WL 63795, at *6. As that decision noted, when "a reviewing court declares that the challenged action of an administrative agency violates the law, vacatur is the 'normal remedy.'" *Id.* (quoting *Kiakombua v. Wolf,* 498 F. Supp. 3d 1, 50 (D.D.C. 2020)); *see also Allina Health Servs. v. Sebelius,* 746 F.3d 1102, 1110 (D.C. Cir. 2014); *Kentucky v. Fed. Hwy. Admin.,* 728 F. Supp. 3d 501, 522 (W.D. Ky. 2024). That is also logical because "[v]acatur operates on the rule itself," not just on a party, and "prevents the rule's application to all who would otherwise be subject to its operation." *Cardona,* 2025 WL 63795, at *6 (quotation omitted).

Finally, the Court should not, and cannot, sever the inadequate program-integrity provisions from the remainder of the Final Rule. To be sure, the *Cardona* district court considered (and rejected) the idea of severing only parts of the rule challenged there. It is questionable whether the APA's remedy provision authorizes severance, but even assuming it is sometimes available, it is not here. First, the Final Rule does not itself contain a statement that all parts are severable (as statutes often do). To the contrary, the Final Rule was announced with an explanation that *some*

11

limited provisions—those newly devised in 2021—could be severed from the package re-adopted from the 2000 rule. Specifically, HHS opined that "[a]s compared to the 2019 rule, new provisions added to the re-adoption of the 2000 rule operate independently of each other—and the 2000 rule—to enhance the program. Particularly as the program operated for decades under the 2000 rule, the 2021 additions are severable from the 2000 rule." 86 Fed. Reg. 56148. That suggests that even HHS understood that the package of 2000 provisions re-adopted in 2021 were an inseparable whole.

Second, and more important, severance would not be workable or sensible because of the nature of the offending provision. Again, the problem here is not that a regulation overly restricts grantees, but that the Rule fails to enforce the statutory prohibition against funding programs where abortion is a method of family planning. That is the *core* of the statute—and the basis for its design to maintain public support—not some ancillary matter. Such grants of funds, with no program-integrity safeguards that meet the statutory command, are in all cases a violation of the statute.

Notably, when the Fourth Circuit found the previous 2019 Rule unlawful under Title X, it rejected severability and set aside the entire Rule—despite an express severability clause. "Despite the severability clause, the [2019] Final Rule is not severable because it is clear HHS intended the [Final Rule] to stand or fall as a whole, and the agency desired a single, coherent policy, the predominant purpose of which is to reinstitute the 1988 Rule." *Mayor of Baltimore*, 973 F.3d at 292 (quotation omitted). While the Plaintiff States disagreed with the Fourth Circuit's merits ruling (and the Supreme Court had granted certiorari before HHS withdrew the 2019 Rule and successfully dismissed the case), its severability ruling is instructive. The argument for severability is

12

much worse for the 2021 Rule than it was for the 2019 Rule, because the problem the Fourth Circuit identified for the 2019 program-integrity rules was that they were too strict, barring potentially legitimate grantees.  By contrast, the offending provisions here are *insufficient* to meet Congress's core anti-funding mandate—as the Sixth Circuit has already found—so the entire Rule is flawed.

Consequently, the Court should vacate the Final Rule.

## CONCLUSION

For the above reasons, the Court should grant summary judgment to the Plaintiff States, declare the Final Rule invalid, and "set aside" the rule, that is, vacate the Rule.

Dated:  January 24, 2025

Respectfully Submitted,

DAVE YOST
Ohio Attorney General

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER* (0096145)
Solicitor General
 **Trial attorney*
STEPHEN P. CARNEY (0063460)
Deputy Solicitor General
AMANDA NAROG (0093954)
Assistant Attorney General
30 East Broad Street, 17th Floor
614-466-8980
614-466-5087 fax
thomas.gaiser@ohioago.gov

*Counsel for the State of Ohio*

STEVE MARSHALL
Alabama Attorney General

*/s/ Edmund G. LaCour Jr.*
Edmund G. LaCour Jr. (*pro hac vice* forthcoming)
Deputy Solicitor General
Office of the Attorney General
501 Washington Ave
Montgomery, AL 36130
Phone: 332-242-7300
Edmund.LaCour@AlabamaAG.gov

*Counsel for the State of Alabama*


TIM GRIFFIN
Arkansas Attorney General

*/s/ Dylan L. Jacobs*
DYLAN L. JACOBS (*pro hac vice* forthcoming)
Deputy Solicitor General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Phone: 501-682-3661
Dylan.jacobs@arkansasag.gov

*Counsel for the State of Arkansas*


JOHN M. GUARD
Acting Florida Attorney General

*/s/ Natalie Christmas*
NATALIE CHRISTMAS
Senior Counselor to the Attorney General
Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
Phone: 850-414-3300
Fax: 850-410-267
Natalie.christmas@myfloridalegal.com

*Counsel for the State of Florida*


ANDREW BAILEY
Missouri Attorney General

*/s/ Josh Divine*
JOSH DIVINE (*pro hac vice* forthcoming)
Solicitor General
Office of the Missouri Attorney General
Supreme Court Building
207 West High Street
Jefferson City, MO 65102
Phone: 573-751-8870
Josh.Divine@ago.mo.gov

*Counsel for the State of Missouri*


MIKE HILGERS
Nebraska Attorney General

*/s/ Lincoln J. Korell*
LINCOLN J. KORELL
 (*pro hac vice* forthcoming)
Solicitor General
Office of the Nebraska
Attorney General
2115 State Capitol
Lincoln, NE 68509
Phone: 402-471-2682
jim.campbell@nebraska.gov

*Counsel for the State of Nebraska*


GENTNER DRUMMOND
Oklahoma Attorney General

*/s/ Zach West*
ZACH WEST
Assistant Solicitor General
Office of the Oklahoma Attorney General
313 N.E. Twenty-First St.
Oklahoma City, OK 73105
Phone: 405-522-4392
zach.west@oag.ok.gov

*Counsel for the State of Oklahoma*

KRIS W. KOBACH
Kansas Attorney General

*/s/ James Rodriguez*
JAMES RODRIGUEZ (*pro hac vice* forthcoming)
Office of Kansas Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, KS 66612-1597
Phone: 785-260-2960
Jay.Rodriguez@ag.ks.gov

*Counsel for the State of Kansas*


RUSSELL COLEMAN
Kentucky Attorney General

*/s/ Lindsey Keiser*
LINDSEY KEISER
Assistant Attorney General
Office of Kentucky Attorney General
1840 Simon Kenton Way, Suite 5300
Covington, KY 41011
Phone: 502-696-5300
Fax: 502-564-2894
lindsey.keiser@ky.gov

*Counsel for the Commonwealth of Kentucky*


ALAN WILSON
South Carolina Attorney General

EMORY SMITH
Deputy Solicitor General
*/s/ Thomas T. Hyrdick*
THOMAS T. HYDRICK
Assistant Deputy Solicitor General
Office of the Attorney General
P.O. Box 11549
Columbia, SC 29211
Phone: 803-734-3742
ThomasHydrick@scag.gov

*Counsel for the State of South Carolina*

JOHN B. MCCUSKEY
West Virginia Attorney General

*/s/ Michael R. Williams*
MICHAEL R. WILLIAMS
Solicitor General
Office of the West Virginia
Attorney General
State Capitol, Bldg 1, Room E-26
Charleston, WV 25305
Phone: 681-313-4511
Michael.R.Williams@wvago.gov

*Counsel for the State of West Virginia*

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties for whom counsel has entered an appearance by operation of the Court's electronic filing system.

*/s/ T. Elliot Gaiser*
T. ELLIOT GAISER (0096145)
Solicitor General